FILED
2/17/2017 11:21:29 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Edgar Garcia

## 2017CI02907

### CAUSE NO. _____

| | | |
|---|---|---|
| **FRANCISCO RIZO AND** | § | **IN THE DISTRICT COURT OF** |
| **HERMELINDA RIZO,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **STATE AUTO PROPERTY &** | § | |
| **CASUALTY INSURANCE** | § | |
| **COMPANY AND DUSTIN CHARLES** | § | **73RD** |
| **BRADFORD,** | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

---

## PLAINTIFFS' ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Francisco Rizo and Hermelinda Rizo ("Plaintiffs") and file this, *Plaintiffs' Original Petition*, complaining of State Auto Property & Casualty Insurance Company ("State Auto") and Dustin Charles Bradford ("Bradford") (hereinafter collectively referred to as "Defendants"), and for cause of action, Plaintiffs would respectfully show this Honorable Court the following:

### DISCOVERY CONTROL PLAN

1. Plaintiffs intend for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiffs will ask the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.



EXHIBIT
A-1

## PARTIES

2.      Plaintiffs Francisco Rizo and Hermelinda Rizo are individuals residing in Bexar County, Texas.

3.      Defendant State Auto is a foreign insurance company engaging in the business of insurance in the State of Texas.  This defendant may be served with personal process, by a process server, by serving its Attorney for Service: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

4.      Defendant Dustin Charles Bradford is an individual residing in and domiciled in the State of Ohio.  This defendant may be served with personal process by a process server at his place of residence at 5191 Willow Grove Place North, Dublin, Ohio 43017.

## JURISDICTION

5.      The Court has jurisdiction over this cause of action because the amount in controversy is within the jurisdictional limits of the Court.  Plaintiffs are seeking monetary relief over $100,000 but not more than $200,000.  Plaintiffs reserve the right to amend their petition during and/or after the discovery process.

6.      The Court has jurisdiction over Defendant State Auto because this defendant is a foreign insurance company that engages in the business of insurance in the State of Texas, and Plaintiffs' causes of action arise out of this defendant's business activities in the State of Texas.

7.      The Court has jurisdiction over Defendant Bradford because this defendant engages in the business of adjusting insurance claims in the State of Texas, and Plaintiffs' causes of action arise out of this defendant's business activities in the State of Texas.

## VENUE

8.  Venue is proper in Bexar County, Texas, because the insured property is situated in Bexar County, Texas.  TEX. CIV. PRAC. & REM. CODE §15.032.

## FACTS

9.  Plaintiffs are the owners of a Texas Homeowners' Insurance Policy (hereinafter referred to as "the Policy"), which was issued by State Auto.

10. Plaintiffs own the insured property, which is specifically located at 8434 Big Creek Drive, San Antonio, Texas 78242, in Bexar County (hereinafter referred to as "the Property").

11. State Auto sold the Policy insuring the Property to Plaintiffs.

12. On or about April 25, 2015, a hail storm and/or windstorm struck Bexar County, Texas, causing severe damage to homes and businesses throughout the area, including Plaintiffs' residence (hereinafter referred to as "the Storm").  Specifically, Plaintiffs' roof sustained extensive damage during the Storm.  Plaintiffs also sustained additional structural and exterior damage during the Storm including, but not limited to, the exterior walls.  Water intrusion through the roof caused significant damage throughout the entire home including, but not limited to, the home's ceilings, walls, insulation, and flooring.  Up noticing the damages, Plaintiffs filed a claim with their insurance company, State Auto, for the damages to their home caused by the hail storm and/or windstorm.

13. Plaintiffs submitted a claim to State Auto against the Policy for Roof Damage, Structural Damage, Water Damage, and Wind Damage the Property sustained as a result of the hail storm and/or windstorm.

14.    Plaintiffs asked that State Auto cover the cost of repairs to the Property, including but not limited to, repair and/or replacement of the roof and repair of the exterior, structural, and/or interior water damages to the Property, pursuant to the Policy.

15.    Defendant State Auto assigned Defendant Bradford as the individual adjuster on the claim.  The adjuster assigned to Plaintiffs' claim was improperly trained and failed to perform a thorough investigation of Plaintiffs' claim.  Bradford conducted a substandard investigation of Plaintiffs' claim.  The inadequacy of Defendant Bradford's investigation is further evidenced by his letter to Plaintiffs dated November 19, 2015, which asserts vague and ambiguous reasons for the denial of the claim and for the items that were damaged, and thus no payment would be made on their claim.  Although Bradford was aware of Plaintiffs' reported potential damages covered by the Policy, he made determinations as to the amount of Plaintiffs' claim without conducting thorough and reasonable investigation and/or inspection of Plaintiffs' damages.  Ultimately, Defendant Bradford determined that the damages were not covered under the Policy, thus no payment would be made on the claim.  Bradford's inadequate investigation was relied upon by Defendant State Auto in this action and resulted in Plaintiffs' claim being undervalued and underpaid.

16.    Defendant State Auto, along with its personnel, failed to thoroughly review and properly oversee the work of the assigned claims representative and adjusters, including Defendant Bradford, ultimately approving an improper adjustment of and an inadequate, unfair settlement of Plaintiffs' claim.  Further, Defendants misrepresented that Plaintiffs' damages were not covered under the Policy, when the losses, in fact, were properly covered damages.  Defendant State Auto denied Plaintiffs' claim without performing a

reasonable investigation. As a result of these wrongful acts and omissions set forth above and further described herein, Plaintiffs were considerably underpaid on their claim and have suffered damages.

17.    Together, Defendants State Auto and Bradford set out to deny and/or underpay on properly covered damages. As a result of this unreasonable investigation, including the under-scoping of Plaintiffs' Storm damages during the investigation and failure to provide full coverage for the damages sustained, Plaintiffs' claim was improperly adjusted, and they were denied adequate and sufficient payment to repair their home. The mishandling of Plaintiffs' claim has also caused a delay in their ability to fully repair their home, which has resulted in additional damages. To this date, Plaintiffs have yet to receive the full payment to which they are entitled under the Policy.

18.    As detailed in the paragraphs below, State Auto wrongfully denied Plaintiffs' claim for repairs of the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiffs. Furthermore, State Auto underpaid some of Plaintiffs' claims by not providing full coverage for the damages sustained by Plaintiffs, as well as under-scoping the damages during its investigation.

19.    To date, State Auto continues to delay in the payment for the damages to the property. As such, Plaintiffs have not been paid in full for the damages to their home.

20.    Defendant State Auto failed to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy. Specifically, it refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery upon

the Policy had been carried out and accomplished by Plaintiffs.  State Auto's conduct constitutes a breach of the insurance contract between State Auto and Plaintiffs.

21.   Defendants State Auto and Bradford misrepresented to Plaintiffs that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence.  Defendants State Auto's and Bradford's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(1).

22.   Defendants State Auto and Bradford failed to make an attempt to settle Plaintiffs' claim in a fair manner, although they were aware of their liability to Plaintiffs under the Policy. Defendants State Auto's and Bradford's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(2)(A).

23.   Defendants State Auto and Bradford failed to explain to Plaintiffs the reasons for their offer of an inadequate settlement.  Specifically, Defendants State Auto and Bradford failed to offer Plaintiffs adequate compensation, without any explanation why full payment was not being made.  Furthermore, Defendants State Auto and Bradford did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiffs' claim.  Defendants State Auto's and Bradford's conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(3).

24.   Defendants State Auto and Bradford failed to affirm or deny coverage of Plaintiffs' claim within a reasonable time.  Specifically, Plaintiffs did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendants

State Auto and Bradford.  Defendants State Auto's and Bradford's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(4).

25.    Defendants State Auto and Bradford refused to fully compensate Plaintiffs, under the terms of the Policy, even though Defendants State Auto and Bradford failed to conduct a reasonable investigation.  Specifically, Defendants State Auto and Bradford performed an outcome-oriented investigation of Plaintiffs' claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property.  Defendants State Auto's and Bradford's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(7).

26.    Defendant State Auto failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiffs' claim, beginning an investigation of Plaintiffs' claim, and requesting all information reasonably necessary to investigate Plaintiffs' claim, within the statutorily mandated time of receiving notice of Plaintiffs' claim.  State Auto's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.055.

27.    Defendant State Auto failed to accept or deny Plaintiffs' full and entire claim within the statutorily mandated time of receiving all necessary information.  State Auto's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.056.

28.    Defendant State Auto failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay.  Specifically, it has delayed full payment of Plaintiffs' claim longer than allowed and, to date, Plaintiffs have not received full

payment for their claim.   State Auto's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.058.

29.   From and after the time Plaintiffs' claim was presented to Defendant State Auto, the liability of State Auto to pay the full claim in accordance with the terms of the Policy was reasonably clear.  However, State Auto has refused to pay Plaintiffs in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment.  State Auto's conduct constitutes a breach of the common law duty of good faith and fair dealing.

30.   Defendants State Auto and Bradford knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiffs.

31.   As a result of Defendants State Auto's and Bradford's wrongful acts and omissions, Plaintiffs were forced to retain the professional services of the attorney and law firm who are representing them with respect to these causes of action.

32.   Plaintiffs' experience is not an isolated case.   The acts and omissions State Auto committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of State Auto with regard to handling these types of claims.  State Auto's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

## CAUSES OF ACTION:

### CAUSES OF ACTION AGAINST DEFENDANT BRADFORD
### NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
### UNFAIR SETTLEMENT PRACTICES

33.  Defendant State Auto assigned Defendant Bradford to adjust the claim.   Defendant Bradford was improperly trained to handle claims of this nature and performed an unreasonable investigation of Plaintiffs' damages.  During his investigation, the adjuster failed to properly assess Plaintiffs' hail storm and/or windstorm damages.  The adjuster also omitted covered damages from his report, including many of Plaintiffs' interior damages.  In addition, the damages that the adjuster did include in the estimate were severely underestimated.

34.  Defendant Bradford's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a).  All violations under this article are made actionable by TEX. INS. CODE §541.151.

35.  Defendant Bradford is individually liable for his unfair and deceptive acts, irrespective of the fact he was acting on behalf of State Auto, because he is a "person" as defined by TEX. INS. CODE §541.002(2).   The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor."  TEX. INS. CODE §541.002(2) (emphasis added; *see also Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998)) (holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against him or her under the Texas Insurance Code and subjecting him or her to individual liability).

36. Falsehoods and misrepresentations may be communicated by actions as well as by the spoken word; therefore, deceptive conduct is equivalent to a verbal representation. Defendant Bradford's misrepresentations by means of deceptive conduct include, but are not limited to: (1) failing to conduct a reasonable inspection and investigation of Plaintiffs' damages; (2) stating that Plaintiffs' damages were less severe than they in fact were; (3) using his own statements about the non-severity of the damage as a basis for denying properly covered damages and/or underpaying damages; and (4) failing to provide an adequate explanation for the inadequate compensation Plaintiffs received. Defendant Bradford's unfair settlement practice, as described above and the example given herein, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

37. Defendant Bradford's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

38. Defendant Bradford failed to explain to Plaintiffs the reasons for his offer of an inadequate settlement. Specifically, Defendant Bradford failed to offer Plaintiffs adequate compensation without any explanation as to why full payment was not being made. Furthermore, Defendant did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did he provide any explanation for the failure to adequately settle Plaintiffs' claim. The

unfair settlement practice of Defendant Bradford as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiffs' claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(3).

39.    Defendant Bradford's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(4).

40.    Defendant Bradford did not properly inspect the Property and failed to account for and/or undervalued many of Plaintiffs' exterior and interior damages, although reported by Plaintiffs to State Auto.  Defendant Bradford's unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(7).

### CAUSES OF ACTION AGAINST ALL DEFENDANTS

41.    Plaintiffs are not making any claims for relief under federal law.

### FRAUD

42.    Defendants State Auto and Bradford are liable to Plaintiffs for common law fraud.

43.    Each and every one of the representations, as described above, concerned material facts for the reason that absent such representations, Plaintiffs would not have acted as they

did, and which Defendants State Auto and Bradford knew were false or made recklessly without any knowledge of their truth as a positive assertion.

44.   The statements were made with the intention that they should be acted upon by Plaintiffs, who in turn acted in reliance upon the statements, thereby causing Plaintiffs to suffer injury and constituting common law fraud.

## CONSPIRACY TO COMMIT FRAUD

45.   Defendants State Auto and Bradford are liable to Plaintiffs for conspiracy to commit fraud.  Defendants State Auto and Bradford were members of a combination of two or more persons whose object was to accomplish an unlawful purpose or a lawful purpose by unlawful means.  In reaching a meeting of the minds regarding the course of action to be taken against Plaintiffs, Defendants State Auto and Bradford committed an unlawful, overt act to further the object or course of action.  Plaintiffs suffered injury as a proximate result.

## CAUSES OF ACTION AGAINST STATE AUTO ONLY

46.   Defendant State Auto is liable to Plaintiffs for intentional breach of contract, as well as intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.

## BREACH OF CONTRACT

47.   Defendant State Auto's conduct constitutes a breach of the insurance contract made between State Auto and Plaintiffs.

48.   Defendant State Auto's failure and/or refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under

the laws of the State of Texas, constitutes a breach of State Auto's insurance contract with Plaintiffs.

**NONCOMPLIANCE WITH TEXAS INSURANCE CODE:**
**UNFAIR SETTLEMENT PRACTICES**

49.     Defendant State Auto's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a).  All violations under this article are made actionable by TEX. INS. CODE §541.151.

50.     Defendant State Auto's unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

51.     Defendant State Auto's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though State Auto's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(2)(A).

52.     Defendant State Auto's unfair settlement practice, as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

53.     Defendant State Auto's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an

unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

54. Defendant State Auto's unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

55. Defendant State Auto's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by TEX. INS. CODE §542.060.

56. Defendant State Auto's failure to acknowledge receipt of Plaintiffs' claim, commence investigation of the claim, and request from Plaintiffs all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

57. Defendant State Auto's failure to notify Plaintiffs in writing of its acceptance or rejection of the claim within the applicable time constraints, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.056.

58. Defendant State Auto's delay of the payment of Plaintiffs' claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

### ACTS CONSTITUTING ACTING AS AGENT

59.    As referenced and described above, and further conduct throughout this litigation and lawsuit, Bradford is an agent of State Auto based on his acts during the handling of this claim, including inspections, adjustments, and aiding in adjusting a loss for or on behalf of the insurer.  TEX. INS. CODE §4001.051.

60.    Separately, and/or in the alternative, as referenced and described above, State Auto ratified the actions and conduct of Bradford including the completion of his duties under the common law and statutory law.

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

61.    Defendant State Auto's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

62.    Defendant State Auto's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claim, although, at that time, State Auto knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

### KNOWLEDGE

63.    Each of the acts described above, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiffs' damages described herein.

### DAMAGES

64.    Plaintiffs would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiffs.

65.   As previously mentioned, the damages caused by the April 25, 2015, hail storm and/or windstorm have not been properly addressed or repaired in the months since the Storm, causing further damages to the Property, and causing undue hardship and burden to Plaintiffs.  These damages are a direct result of Defendant State Auto's and Bradford's mishandling of Plaintiffs' claim in violation of the laws set forth above.

66.   For breach of contract, Plaintiffs are entitled to regain the benefit of their bargain, which is the amount of their claim, together with attorney's fees.

67.   For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, mental anguish, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiffs ask for three times their actual damages.  TEX. INS. CODE §541.152.

68.   For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiffs are entitled to the amount of their claim, as well as eighteen (18) percent interest per annum on the amount of such claim as damages, together with attorney's fees.  TEX. INS. CODE §542.060.

69.   For breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

70.   For fraud, Plaintiffs are entitled to recover actual damages and exemplary damages for knowingly fraudulent and malicious representations, along with attorney's fees, interest, and court costs.

71.  For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

### JURY DEMAND

72.  Plaintiffs hereby request that all causes of action alleged herein be tried before a jury consisting of citizens residing in Bexar County, Texas. Plaintiffs hereby tender the appropriate jury fee.

### WRITTEN DISCOVERY

#### REQUESTS FOR DISCLOSURE

73.  *Plaintiffs' Request for Disclosure to Defendant State Auto Property & Casualty Insurance Company* is attached as "Exhibit A." *Plaintiffs' Request for Disclosure to Defendant Dustin Charles Bradford* is attached as "Exhibit A-1."

#### REQUESTS FOR PRODUCTION

74.  *Plaintiffs' First Request for Production to Defendant State Auto Property & Casualty Insurance Company* is attached as "Exhibit B." *Plaintiffs' First Request for Production to Defendant Dustin Charles Bradford* is attached as "Exhibit B-1."

#### INTERROGATORIES

75.  *Plaintiff Francisco Rizo's First Set of (Claim Specific) Interrogatories to Defendant State Auto Property & Casualty Insurance Company* is attached as "Exhibit C." *Plaintiff Francisco Rizo's First Set of (Claim Specific) Interrogatories to Defendant Dustin Charles Bradford* is attached as "Exhibit C-1." *Plaintiff Hermelinda Rizo's First Set of*

*(Claim Specific) Interrogatories to Defendant State Auto Property & Casualty Insurance Company* is attached as "Exhibit D."

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon trial hereof, said Plaintiffs have and recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found. In addition, Plaintiffs request the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for prejudgment and postjudgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which they may show themselves justly entitled.


Respectfully submitted,

**MOSTYN LAW**


 /s/ Gregory F. Cox
Gregory F. Cox
State Bar No. 00793561
gfcdocketefile@mostynlaw.com
6280 Delaware Street
Beaumont, Texas 77706
(409) 832-2777 (Office)
(409) 832-2703 (Facsimile)

Molly K. Bowen
State Bar No. 24069898
3810 W. Alabama Street
Houston, Texas 77027
(713) 861-6616 (Office)
(713) 861-8084 (Facsimile)
**ATTORNEYS FOR PLAINTIFFS**

**"EXHIBIT A"**

**CAUSE NO._____**

| | | |
|---|---|---|
| **FRANCISCO RIZO AND** | § | **IN THE DISTRICT COURT OF** |
| **HERMELINDA RIZO,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **STATE AUTO PROPERTY &** | § | |
| **CASUALTY INSURANCE** | § | |
| **COMPANY AND DUSTIN CHARLES** | § | |
| **BRADFORD,** | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFFS' REQUEST FOR DISCLOSURE TO DEFENDANT STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY

TO:   DEFENDANT STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY, by and through its Attorney for Service: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, State Auto Property & Casualty Insurance Company (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in Rule 194.2.

Respectfully submitted,

**MOSTYN LAW**

*/s/ Amber Anderson Mostyn*_____
Amber Anderson Mostyn
State Bar No. 90001704
Molly K. Bowen
State Bar No. 24069898
ala_teamefile@mostynlaw.com
3810 W. Alabama St.
Houston, Texas 77027
(713) 714-0000 (Office)
(713) 714-1111 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

1

**"EXHIBIT B"**

CAUSE NO. _____

| | | |
|---|---|---|
| FRANCISCO RIZO AND | § | IN THE DISTRICT COURT OF |
| HERMELINDA RIZO, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| STATE AUTO PROPERTY & | § | |
| CASUALTY INSURANCE | § | |
| COMPANY AND DUSTIN CHARLES | § | |
| BRADFORD, | § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

### PLAINTIFFS' FIRST REQUEST FOR PRODUCTION TO DEFENDANT STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY

TO:   DEFENDANT STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY, by and through its Attorney for Service: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

Pursuant to Rule 196 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, State Auto Property & Casualty Insurance Company (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following request for production.

Respectfully submitted,

MOSTYN LAW

*/s/ Amber Anderson Mostyn*
Amber Anderson Mostyn
State Bar No. 90001704
Molly K. Bowen
State Bar No. 24069898
ala_teamefile@mostynlaw.com
3810 W. Alabama St.
Houston, Texas 77027
(713) 714-0000 (Office)
(713) 714-1111 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

1

## DEFINITIONS

The following definitions shall have the following meanings, unless the context of the discovery request requires otherwise:

1. "Document" means any textual, visual and auditory information items in all forms in which they are stored and/or communicated.

2. "Person" means an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, agent, broker, adjuster, contractor/estimator, engineer, independent contractor, or employee.

3. "Handle", handled", "handling", and/or "worked on" - any person, as defined above, that made a decision, investigated, adjusted, consulted, supervised, managed, settled, approved, provided information or otherwise performed a task relating to the claims made the basis of this lawsuit, excluding persons performing purely ministerial or clerical tasks.

4. "Policy" refers to the policy of insurance in effect on the date that the loss made the basis of this lawsuit occurred.

5. "Property" refers to the residence, dwelling, other structures, and personal property covered by the Policy, as defined above, made the basis of this lawsuit.

6. "Bexar County Hailstorm" and/or "April 25, 2015 hail and windstorm" refer to the hail and/or windstorm that occurred during the month of April of 2015 in Bexar County and surrounding areas.

7. "Describe," when referring to a document, is defined to require that you state the following:

   a. The nature (e.g., letter, handwritten note) of the document;
   b. The title or heading that appears on the document;
   c. The date of the document and the date of each addendum supplement, or other addition or change;
   d. The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered;
   e. The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

2

**PRODUCTION PROTOCOL RELATING TO ELECTRONICALLY STORED
INFORMATION (ESI) ATTENDANT TO PLAINTIFFS' DISCOVERY TO
DEFENDANT**

1.  "Information items" as used here encompass individual documents and records (including associated metadata) whether on paper or film, as discrete "files" stored electronically, optically or magnetically or as a record within a database, archive or container file. The term should be read broadly to include e-mails, messaging, word processed documents, digital presentations and spreadsheets.

2.  Consistent with Tex. R. Civ. P. 196.4, responsive electronically stored information (ESI) has been requested by the Plaintiff(s) in its native form; that is, in the form in which the information was customarily created, used and stored by the native application employed by the producing party in the ordinary course of business. The producing party shall not produce in a format not requested and later assert that production as a basis of not producing in the requested format, except upon agreement by the parties prior to production or ordered by the Court. The parties are reminded of their obligation to confer and to make reasonable efforts to resolve disputes regarding production without court intervention. See *In re Weekley Homes, L.P.*, 295 S.W. 3d 309 (Tex. 2009); Tex. R. Civ. P. 192.4(b).

3.  If it is infeasible or unduly burdensome to produce an item of responsive ESI in its native form, it may be produced in an agreed-upon near-native form; that is, in a form in which the item can be imported into the native application without a material loss of content, structure or functionality as compared to the native form. Static image production formats serve as near-native alternatives only for information items that are natively static images (i.e., photographs and scans). Any and all agreements between the parties on a non-native form of production shall occur prior to initial production and the agreements shall be in writing. If no agreement can be made between the parties, consistent with Texas Rules of Civil Procedure 196.4, Defendant will object and file with the Court evidence that production in native or near-native form is unduly burdensome or requires extraordinary steps. In the event the Court determines that production in native or near-native format is infeasible, production shall be made in accordance with Instruction No. 6 of this Protocol.

4.  The table below supplies examples of agreed-upon native or near-native forms in which specific types of ESI should be produced:

| Source ESI | Native or Near Native Form or Forms Sought |
|---|---|
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| WordPerfect documents | .WPD |
| Adobe Acrobat Documents | .PDF |
| Photographs | .JPG, .PDF |

| Xactimate Documents | .ESX |
|---|---|
| E-mail | Messages should be produced in a form or forms that readily support import into standard e-mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard). For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced. For Lotus Notes mail, furnish .NSF files or convert to .PST. If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced in a delimited text file. |

5.    Absent a showing of need, a party shall only produce reports from databases that can be generated in the ordinary course of business (i.e., without specialized programming skills), and these shall be produced in a delimited electronic format preserving field and record structures and names. The parties will meet and confer prior to initial production regarding programmatic database productions as necessary.

6.    Information items that are paper documents or that require redaction shall be produced in static image formats, e.g., single-page .TIF or multipage PDF images. If an information item contains color, the producing party shall not produce the item in a form that does not display color. The full content of each document will be extracted by optical character recognition (OCR) or other suitable method to a searchable text file produced with the corresponding page image(s) or embedded within the image file.

7.    Parties shall take reasonable steps to ensure that text extraction methods produce usable, accurate and complete searchable text.

8.    Individual information items requiring redaction shall (as feasible) be redacted natively or produced in .PDF format and redacted using the Adobe Acrobat redaction feature. Redactions shall not be accomplished in a manner that serves to downgrade the ability to electronically search the unredacted portions of the item. To the extent a producing party asserts that production in .PDF format and redaction using the Adobe Acrobat redaction feature is unfeasible, the parties are directed to confer in an attempt to resolve any dispute without Court intervention. If the dispute cannot be resolved between the parties, the manner of production can be brought before the Court consistent with Tex. R. Civ. P. 196.4.

9.    Upon a showing of need, a producing party shall make a reasonable effort to locate and produce the native counterpart(s) of any .PDF or .TIF document produced. The parties agree to meet and confer prior to initial production regarding production of any such

documents.  This provision shall not serve to require a producing party to reveal redacted content.

10. Except as set out in this Protocol, a party need not produce identical information items in more than one form and shall globally de-duplicate identical items across custodians using each document's unique MD5 hash value.  The content, metadata and utility of an information item shall all be considered in determining whether information items are identical, and items reflecting different information shall not be deemed identical.

11. Production should be made using appropriate electronic media of the producing party's choosing provided that the production media chosen not impose an undue burden or expense upon a recipient.  All productions should be encrypted for transmission to the receiving party.  The producing party shall, contemporaneously with production, supply decryption credentials and passwords to the receiving party for all items produced in an encrypted or password-protected form.

12. Each information item produced shall be identified by naming the item to correspond to a Bates identifier according to the following protocol:

  i.  The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying the party making production;

  ii.  The next nine (9) characters will be a unique, consecutive numeric value assigned to the item by the producing party.  This value shall be padded with leading zeroes as needed to preserve its length;

  iii.  The final five (5) characters are reserved to a sequence beginning with an underscore (_) followed by a four digit number reflecting pagination of the item when printed to paper or converted to an image format for use in proceedings or when attached as exhibits to pleadings.

  iv.  By way of example, a Microsoft Word document produced by Republic Lloyds in its native format might be named: REPL000000123.docx.  Were the document printed out for use in deposition, page six of the printed item must be embossed with the unique identifier REPL000000123_0006.

13. Information items designated "Confidential" may, at the Producing Party's option:

  a.  Be separately produced on electronic production media prominently labeled "Confidential" to comply with a Protective Order, if applicable.

  b.  When any item so designated is converted to a printed format for any reason or imaged format for use in any submission or proceeding, the printout or page image shall bear be labeled "Confidential" on each page in a clear and conspicuous manner, but not so as to obscure content.

14.   Producing party shall furnish a delimited load file supplying the metadata field values listed below for each information item produced (to the extent the values exist and as applicable):

| **Field** |
| --- |
| BeginBates |
| EndBates |
| BeginAttach |
| EndAttach |
| Custodian/Source |
| Source File Name |
| Source File Path |
| From/Author |
| To |
| CC |
| BCC |
| Date Sent |
| Time Sent |
| Subject/Title |
| Last Modified Date |
| Last Modified Time |
| Document Type |
| Redacted Flag (yes/no) |
| Hidden Content/Embedded Objects Flag (yes/no) |
| Confidential flag (yes/no) |
| MD5 Hash value |
| Hash De-Duplicated Instances (by full path) |

15.   Each production should include a cross-reference load file that correlates the various files, images, metadata field values and searchable text produced.

16.   Parties shall respond to each request for production by listing the Bates numbers/ranges of responsive documents produced, and where an information item responsive to these discovery requests has been withheld or redacted on a claim that it is privileged, the producing party shall furnish a privilege log in accordance with Texas Rule of Civil Procedure 193.3.

## **PLAINTIFFS' FIRST REQUEST FOR PRODUCTION TO DEFENDANT**

1.  The following insurance documents issued for the Property as identified in the Petition:
    a.  the policy at issue for the date of loss as identified in the Petition; and
    b.  the policy declarations page for the 3 years preceding the storm.

    **RESPONSE:**

2.  Produce underwriting files and documents relating to the underwriting for all insurance policies for the Property identified in the Petition.  This request is limited to the past 5 years.  To the extent Defendant contends that the underwriting file or documents older than 5 years impact the damages or coverage, produce that underwriting file or document.

    **RESPONSE:**

3.  All documents relating to the condition or damages of the Property or any insurance claim on the Property identified in the Petition.

    **RESPONSE:**

4.  All documents relating to any real property insurance claims made by the Plaintiff(s).  This request is limited to the past 5 years.  To the extent Defendant contends that documents older than 5 years impact the damages or coverage, produce that document.

    **RESPONSE:**

5.  All requests for information to any third party about the Property, the Plaintiff(s), or the claims made the basis of this Lawsuit.

    **RESPONSE:**

6.  All documents used to instruct, advise, guide, inform, educate, or assist provided to any person handling the claim made the basis of this Lawsuit that related to the adjustment of this type of claim, i.e., hail property damage.

    **RESPONSE:**

7.    All documents obtained from any person(s) or entity(ies) and governmental agencies on behalf of Defendant or by Defendant relating to the Plaintiff(s), the Property, the Policy, or the claims made the basis of this Lawsuit.  This request includes all documents obtained by way of deposition on written questions.

**RESPONSE:**

8.    All documents received (prior to litigation) directly or indirectly from Plaintiff(s) or created by Plaintiff(s) related to the Property made the basis of this lawsuit.  This request is limited to the past 5 years.  To the extent Defendant contends that any document older than 5 years impact the damages or coverage, produce that document.

**RESPONSE:**

9.    Produce a copy of all price lists used to prepare any estimates for the claim made the basis of this Lawsuit.  To the extent the pricelist is an unmodified pricelist from a third party, you can reference the vendor and version of the pricelist with a stipulation that it is unmodified.

**RESPONSE:**

10.   To the extent Defendant created or altered any prices used in the preparation of an estimate in the claim made the basis of this Lawsuit, produce all documents related to the creation or alteration of the price, including the original price for that item and the factual bases for the creation or alteration.

**RESPONSE:**

11.   A complete copy the personnel file related to performance (excluding medical and retirement information) for all people and their managers and/or supervisors who directly handled the claim made the basis of this Lawsuit, including all documents relating to applications for employment, former and current resumes, last known address, job title, job descriptions, reviews, evaluations, and all drafts or versions of requested documents. This request is limited to the past 5 years.

**RESPONSE:**

12.    All organizational charts, diagrams, lists, and/or documents reflecting each department, division or section of Defendant's company to which the claim made the basis of this Lawsuit was assigned.

**RESPONSE:**

13.    All Texas insurance licenses and/or certifications in effect that the time of the claims arising out of the Bexar County Hailstorms which occurred on or about April 25, 2015 for all persons who worked on the claim made the basis of this Lawsuit, including any document relating to the application, issuance or review of those licenses and/or certifications.  This request excludes those who performed merely ministerial acts, i.e. people who answer phones, file clerks whose only job duty is to stamp "received," etc.

**RESPONSE:**

14.    If an engineer and/or engineering firm evaluated the Property, produce all reports written at the request of Defendant by that engineer or engineering firm within the last 3 years. This request is limited to the extent that the engineer and/or engineering firm was used during claims handling.

**RESPONSE:**

15.    Produce all documents showing amounts billed and paid to any engineer and/or engineering firm identified in response to Request for Production No. 14 above within the last three years.  A summary is acceptable in lieu of actual invoices or payments.

**RESPONSE:**

16.    All documents reflecting the pre-anticipation of litigation reserve(s) set on the claim made the basis of this Lawsuit, including any changes to the reserve(s) along with any supporting documentation.

**RESPONSE:**

17.   All documents relating to issues of honesty, criminal actions, past criminal record, criminal conduct, fraud investigation and/or inappropriate behavior which resulted in disciplinary action by Defendant of any person(s) or entity(ies) who handled the claim made the basis of this Lawsuit, the Plaintiff(s) or any person assisting on the claim made the basis of this Lawsuit.

**RESPONSE:**

18.   All documents relating to work performance, claims patterns, claims problems, commendations, claims trends, claims recognitions, and/or concerns for any person who handled the claim made the basis of this Lawsuit.

**RESPONSE:**

19.   All XactAnalysis reports that include this claim in any way, this Policy, the amount paid on this Policy and/or referencing any person who handled the claim made the basis of this Lawsuit relating to claims arising out of the Bexar County Hailstorms occurring on or about April 25, 2015.

**RESPONSE:**

20.   Any email or document that transmits, discusses, or analyzes any report produced in response to Request for Production No. 19 above.

**RESPONSE:**

21.   All Simsol Management reports that include this claim in any way, this Policy, the amount paid on this Policy and/or referencing any person who handled the claim made the basis of this Lawsuit relating to claims arising out of the Bexar County Hailstorms occurring on or about April 25, 2015.

**RESPONSE:**

22.   Any email or document that transmits, discusses, or analyzes any report produced in response to Request for Production No. 21 above.

**RESPONSE:**

23.     For any consulting expert whose mental impressions or opinions have been reviewed by a testifying expert: all documents or tangible things that have been provided to, reviewed by, or prepared for the testifying expert.

        **RESPONSE:**


24.     Pursuant to Texas Rule of Evidence 609(f), provide all documents evidencing conviction of a crime which you intend to use as evidence to impeach any party or witness.

        **RESPONSE:**


25.     All indemnity agreements in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit.

        **RESPONSE:**


26.     All contracts in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit.

        **RESPONSE:**


27.     All confidentiality agreements and/or instructions regarding confidentiality in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who the claim made the basis of the Lawsuit.

        **RESPONSE:**


28.     All documents between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit regarding document retention policy in effect at the time of Plaintiffs' claim.

        **RESPONSE:**


29.     To the extent the claim involves rescinding of the policy, all documents regarding Defendant's standards for investigating and rescinding and/or voiding a policy.

        **RESPONSE:**

**"EXHIBIT C"**

**CAUSE NO. _____**

| | | |
|---|---|---|
| FRANCISCO RIZO AND | § | IN THE DISTRICT COURT OF |
| HERMELINDA RIZO, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| STATE AUTO PROPERTY & | § | |
| CASUALTY INSURANCE | § | |
| COMPANY AND DUSTIN CHARLES | § | |
| BRADFORD, | § | |
| *Defendants*. | § | _____ JUDICIAL DISTRICT |

**PLAINTIFF FRANCISCO RIZO'S FIRST SET OF (CLAIM SPECIFIC)
INTERROGATORIES TO DEFENDANT STATE AUTO PROPERTY & CASUALTY
INSURANCE COMPANY**

TO:    DEFENDANT STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY, by and through its Attorney for Service: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

Pursuant to Rule 197 of the Texas Rules of Civil Procedure, Plaintiff Francisco Rizo requests that the above-named Defendant, State Auto Property & Casualty Insurance Company (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following set of interrogatories.

Respectfully submitted,

MOSTYN LAW

*/s/ Amber Anderson Mostyn*
Amber Anderson Mostyn
State Bar No. 90001704
Molly K. Bowen
State Bar No. 24069898
ala_teamefile@mostynlaw.com
3810 W. Alabama St.
Houston, Texas 77027
(713) 714-0000 (Office)
(713) 714-1111 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

1

# DEFINITIONS

The following definitions shall have the following meanings, unless the context of the discovery request requires otherwise:

1. "Document" means any textual, visual and auditory information items in all forms in which they are stored and/or communicated.

2. "Person" means an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, agent, broker, adjuster, contractor/estimator, engineer, independent contractor, or employee.

3. "Handle", handled", "handling", and/or "worked on" - any person, as defined above, that made a decision, investigated, adjusted, consulted, supervised, managed, settled, approved, provided information or otherwise performed a task relating to the claims made the basis of this lawsuit, excluding persons performing purely ministerial or clerical tasks.

4. "Policy" refers to the policy of insurance in effect on the date that the loss made the basis of this lawsuit occurred.

5. "Property" refers to the residence, dwelling, other structures, and personal property covered by the Policy, as defined above, made the basis of this lawsuit.

6. "Bexar County Hailstorm" and/or "April 25, 2015 hail and windstorm" refer to the hail and/or windstorm that occurred during the month of April of 2015 in Bexar County and surrounding areas.

7. "Describe," when referring to a document, is defined to require that you state the following:

   a. The nature (e.g., letter, handwritten note) of the document;
   b. The title or heading that appears on the document;
   c. The date of the document and the date of each addendum supplement, or other addition or change;
   d. The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered;
   e. The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

**PRODUCTION PROTOCOL RELATING TO ELECTRONICALLY STORED INFORMATION (ESI) ATTENDANT TO PLAINTIFFS' DISCOVERY TO DEFENDANT**

1.  "Information items" as used here encompass individual documents and records (including associated metadata) whether on paper or film, as discrete "files" stored electronically, optically or magnetically or as a record within a database, archive or container file. The term should be read broadly to include e-mails, messaging, word processed documents, digital presentations and spreadsheets.

2.  Consistent with Tex. R. Civ. P. 196.4, responsive electronically stored information (ESI) has been requested by the Plaintiff(s) in its native form; that is, in the form in which the information was customarily created, used and stored by the native application employed by the producing party in the ordinary course of business. The producing party shall not produce in a format not requested and later assert that production as a basis of not producing in the requested format, except upon agreement by the parties prior to production or ordered by the Court. The parties are reminded of their obligation to confer and to make reasonable efforts to resolve disputes regarding production without court intervention. See *In re Weekley Homes, L.P.*, 295 S.W. 3d 309 (Tex. 2009); Tex. R. Civ. P. 192.4(b).

3.  If it is infeasible or unduly burdensome to produce an item of responsive ESI in its native form, it may be produced in an agreed-upon near-native form; that is, in a form in which the item can be imported into the native application without a material loss of content, structure or functionality as compared to the native form. Static image production formats serve as near-native alternatives only for information items that are natively static images (i.e., photographs and scans). Any and all agreements between the parties on a non-native form of production shall occur prior to initial production and the agreements shall be in writing. If no agreement can be made between the parties, consistent with Texas Rules of Civil Procedure 196.4, Defendant will object and file with the Court evidence that production in native or near-native form is unduly burdensome or requires extraordinary steps. In the event the Court determines that production in native or near-native format is infeasible, production shall be made in accordance with Instruction No. 6 of this Protocol.

4.  The table below supplies examples of agreed-upon native or near-native forms in which specific types of ESI should be produced:

| Source ESI | Native or Near Native Form or Forms Sought |
|---|---|
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| WordPerfect documents | .WPD |
| Adobe Acrobat Documents | .PDF |
| Photographs | .JPG, .PDF |

| Xactimate Documents | .ESX |
|---|---|
| E-mail | Messages should be produced in a form or forms that readily support import into standard e-mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard). For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced. For Lotus Notes mail, furnish .NSF files or convert to .PST. If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced in a delimited text file. |

5. Absent a showing of need, a party shall only produce reports from databases that can be generated in the ordinary course of business (i.e., without specialized programming skills), and these shall be produced in a delimited electronic format preserving field and record structures and names. The parties will meet and confer prior to initial production regarding programmatic database productions as necessary.

6. Information items that are paper documents or that require redaction shall be produced in static image formats, e.g., single-page .TIF or multipage PDF images. If an information item contains color, the producing party shall not produce the item in a form that does not display color. The full content of each document will be extracted by optical character recognition (OCR) or other suitable method to a searchable text file produced with the corresponding page image(s) or embedded within the image file.

7. Parties shall take reasonable steps to ensure that text extraction methods produce usable, accurate and complete searchable text.

8. Individual information items requiring redaction shall (as feasible) be redacted natively or produced in .PDF format and redacted using the Adobe Acrobat redaction feature. Redactions shall not be accomplished in a manner that serves to downgrade the ability to electronically search the unredacted portions of the item. To the extent a producing party asserts that production in .PDF format and redaction using the Adobe Acrobat redaction feature is unfeasible, the parties are directed to confer in an attempt to resolve any dispute without Court intervention. If the dispute cannot be resolved between the parties, the manner of production can be brought before the Court consistent with Tex. R. Civ. P. 196.4.

9. Upon a showing of need, a producing party shall make a reasonable effort to locate and produce the native counterpart(s) of any .PDF or .TIF document produced. The parties agree to meet and confer prior to initial production regarding production of any such

documents.  This provision shall not serve to require a producing party to reveal redacted content.

10. Except as set out in this Protocol, a party need not produce identical information items in more than one form and shall globally de-duplicate identical items across custodians using each document's unique MD5 hash value.  The content, metadata and utility of an information item shall all be considered in determining whether information items are identical, and items reflecting different information shall not be deemed identical.

11. Production should be made using appropriate electronic media of the producing party's choosing provided that the production media chosen not impose an undue burden or expense upon a recipient.  All productions should be encrypted for transmission to the receiving party.  The producing party shall, contemporaneously with production, supply decryption credentials and passwords to the receiving party for all items produced in an encrypted or password-protected form.

12. Each information item produced shall be identified by naming the item to correspond to a Bates identifier according to the following protocol:

    i. The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying the party making production;

    ii. The next nine (9) characters will be a unique, consecutive numeric value assigned to the item by the producing party.  This value shall be padded with leading zeroes as needed to preserve its length;

    iii. The final five (5) characters are reserved to a sequence beginning with an underscore (_) followed by a four digit number reflecting pagination of the item when printed to paper or converted to an image format for use in proceedings or when attached as exhibits to pleadings.

    iv. By way of example, a Microsoft Word document produced by Republic Lloyds in its native format might be named: REPL000000123.docx.  Were the document printed out for use in deposition, page six of the printed item must be embossed with the unique identifier REPL000000123_0006.

13. Information items designated "Confidential" may, at the Producing Party's option:

    a. Be separately produced on electronic production media prominently labeled "Confidential" to comply with a Protective Order, if applicable.

    b. When any item so designated is converted to a printed format for any reason or imaged format for use in any submission or proceeding, the printout or page image shall bear be labeled "Confidential" on each page in a clear and conspicuous manner, but not so as to obscure content.

14.   Producing party shall furnish a delimited load file supplying the metadata field values listed below for each information item produced (to the extent the values exist and as applicable):

| **Field** |
| --- |
| BeginBates |
| EndBates |
| BeginAttach |
| EndAttach |
| Custodian/Source |
| Source File Name |
| Source File Path |
| From/Author |
| To |
| CC |
| BCC |
| Date Sent |
| Time Sent |
| Subject/Title |
| Last Modified Date |
| Last Modified Time |
| Document Type |
| Redacted Flag (yes/no) |
| Hidden Content/Embedded Objects Flag (yes/no) |
| Confidential flag (yes/no) |
| MD5 Hash value |
| Hash De-Duplicated Instances (by full path) |

15.   Each production should include a cross-reference load file that correlates the various files, images, metadata field values and searchable text produced.

16.   Parties shall respond to each request for production by listing the Bates numbers/ranges of responsive documents produced, and where an information item responsive to these discovery requests has been withheld or redacted on a claim that it is privileged, the producing party shall furnish a privilege log in accordance with Texas Rule of Civil Procedure 193.3.

## PLAINTIFF FRANCISCO RIZO'S FIRST SET OF (CLAIM SPECIFIC) INTERROGATORIES TO DEFENDANT

1.  Identify all persons, address, including job title, dates of employment, and a description of each individual's role in the claim made the basis of this Lawsuit, if any, for all persons providing information for the answers these interrogatories.

    **ANSWER:**

2.  Identify all persons and/or entities who handled the claim made the basis of the Lawsuit on behalf of Defendant.

    **ANSWER:**

3.  State the following concerning notice of claim and timing of payment:

    a.  The date and manner in which Defendant received notice of the claim;
    b.  The date and manner in which Defendant acknowledged receipt of the claim;
    c.  The date and manner in which Defendant commenced investigation of the claim;
    d.  The date and manner in which Defendant requested from the Plaintiffs all items, statements, and forms reasonably necessary that Defendant reasonably believed, at the time, would be required from the Plaintiffs; and
    e.  The date and manner in which Defendant notified the claimant(s) in writing of the acceptance or rejection of the claim.
    f.  To the extent Defendant felt it was applicable to this claim, did Defendant request an additional 45 days to accept or reject the claim, and if so, for what reason and state the date and manner in which Defendant made that request.
    g.  The date and manner in which you notified Plaintiffs of acceptance or rejection of coverage for all or any portion of Plaintiffs' claim; and
    h.  The date and manner of all payments made to insured, identifying whether payment was made under structure, additional structure, contents and/or ALE provisions.

    **ANSWER:**

4.  Identify each inspection of the Property made the basis of this Lawsuit by:
    a.  The name and job title of each person who inspected the Property;
    b.  The date of each inspection;
    c.  The purpose of each inspection; and
    d.  Any documents generated during or as a result of each inspection, including the persons and/or entities in possession of those documents.

    **ANSWER:**

5. If Defendant is aware of documents that are not in Defendant's possession that are related the Claim and were gathered by a person or entity working on behalf of Defendant (directly or indirectly), identify the documents, including the persons and/or entities in possession of those documents with last known addresses.

**ANSWER:**

6. State all dates on which Defendant closed Plaintiffs' claim and to the extent Defendant asserts statute of limitations as a defense, state all dates and manners in which Defendant notified Plaintiff(s).

**ANSWER:**

7. Does Defendant contend that Plaintiff(s) failed to provide proper notice of the claim made the basis of this Lawsuit under either the policy or the Texas Insurance Code, and, if so, describe how the notice was deficient, identifying any resulting prejudice caused to Defendant.

**ANSWER**:

8. At the time the claim made the basis of this Lawsuit was investigated by Defendant (and prior to the anticipation of litigation), describe Defendant's understanding of areas of the property (i.e., roof, interior) Defendant was investigating, identifying the coverage sections (i.e., dwelling, other structure, ALE, contents, and/or code upgrade) of the Policy upon which the claim was paid or denied.

**ANSWER:**

9. Does Defendant contend that at the time the claim made the basis of this Lawsuit was investigated by Defendant (and prior to anticipation of litigation), Plaintiffs failed to protect the property from further damage or loss, make reasonable and necessary repairs or temporary repairs required to protect the Property as provided under the Policy?

**ANSWER:**

10.   At the time the claim made the basis of this Lawsuit was investigated by Defendant (and prior to anticipation of litigation), state whether the Plaintiff(s) failed to exhibit/provide access to the Property as reasonably requested by Defendant, and, if so, describe how Plaintiffs failed to do so, identifying any resulting prejudice caused to Defendant.

   **ANSWER:**


11.   At the time the claim made the basis of this Lawsuit was investigated (and prior to anticipation of litigation), identify all documents and information requested from Plaintiff(s) stating the date and manner in which the request was made to Plaintiffs. If Defendant contends that Plaintiff(s) failed to provide Defendant with requested documents and/or information, identify all requests Plaintiffs did not respond and if Defendant denied any portion of the claim based on Plaintiffs' failure to respond.

   **ANSWER:**


12.   At the time the claim made the basis of this Lawsuit was investigated (and prior to the anticipation of litigation), did Defendant request or take any statements and/or examinations under oath of Plaintiff(s) as provided under the policy. If so, state the date and manner in which Defendant made the request, the date on which any statements or examinations under oath were taken and the manner in which they were recorded or documented, identifying all persons who requested and/or took the statement or examination under oath.   If Defendant contends that Plaintiff(s) failed to provide Defendant with a requested statement or examination, describe how Plaintiff failed to comply with any requests, to the extent it was relied upon to deny any portion of Plaintiffs' claim.

   **ANSWER:**


13.   At the time the claim made the basis of this Lawsuit was investigated and the Property inspected (and prior to anticipation of litigation), describe all damage attributable to the storm observed at the Property by Defendant or any persons or entities on behalf of Defendant.

   **ANSWER:**

14.  If you contend Plaintiffs' damages claimed in this lawsuit are the result of a prior insurance claim or prior unrepaired damage, please list all such prior claims on the property made in the last ten years, including claim number, date of loss, type of loss, and payments, if any, and identify which prior claim or claims you contend pertain to such damage.

**ANSWER:**

15.  Identify all exclusions under the Policy applied to the claim made the basis of this Lawsuit, and for each exclusion identified, state the reason(s) that Defendant relied upon to apply that exclusion.

**ANSWER:**

16.  Describe how Defendant determined whether overhead and profit ("O&P") should be applied to the claim made the basis of this Lawsuit, identifying the criteria for that determination.

**ANSWER:**

17.  State whether sales tax was paid by Defendant on all materials and/or labor and the method of calculation.   To the extent this information is reflected on an estimate, Defendant can refer Plaintiff(s) to such estimate.

**ANSWER:**

18.  Identify all items on the claim made the basis of this Lawsuit to which Defendant applied depreciation, stating for each item the criteria used and the age of the item.

**ANSWER:**

19.  To the extent Defendant utilized an estimating software and modified the manufacturer's settings, with respect to Plaintiffs' claim, identify those modifications.

**ANSWER:**

20.     State whether Defendant applied depreciation to the tear off of the damaged roof and/or other debris removal in the claim made the basis of this Lawsuit, identifying the basis for that depreciation and the applicable policy section under which the tear off was paid under.

        **ANSWER:**

21.     Identify all price lists used to prepare all estimates on the claim made the basis of this Lawsuit, stating the manufacturer, version, date and geographical area. For any price list developed by a third party vendor, identify any additions, deletions, alterations or modifications made by Defendant, describing the change and purpose of the change for preparing an estimate on the claim made the basis this Lawsuit.

        **ANSWER:**

22.     State whether of any persons and/or entities who handled the claim made the basis this Lawsuit failed to follow any rules, guidelines, policies, or procedures implemented by Defendant for the Bexar County Hailstorms occurring on or about April 25, 2015 in regards to the adjustment of this claim. If so, identify each person and the specific rule, guideline, policy, or procedure that was violated.

        **ANSWER:**

23.     To the extent Defendant is aware, state whether the estimate(s) prepared for the claim made the basis this Lawsuit failed to identify, note, or document any storm related damage at the Property. If so, identify each item of damage that was not properly identified, noted, or documented.

        **ANSWER:**

24.     To extent Defendant is aware, state whether the estimate(s) prepared for the claim made the basis of lawsuit wrongly included or excluded any item or payment. If so, identify each item or payment and state whether it should have been included or excluded from the estimates prepared on the claim made the basis this Lawsuit.

        **ANSWER:**

25.     To the extent Defendant is aware, state any violations of Texas Insurance Code Section 541 that were discovered on this claim during the claims handling process.

        **ANSWER:**

**"EXHIBIT D"**

**CAUSE NO. _____**

| | | |
|---|---|---|
| FRANCISCO RIZO AND | § | IN THE DISTRICT COURT OF |
| HERMELINDA RIZO, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| STATE AUTO PROPERTY & | § | |
| CASUALTY INSURANCE | § | |
| COMPANY AND DUSTIN CHARLES | § | |
| BRADFORD, | § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF HERMELINDA RIZO'S FIRST SET OF (CLAIM SPECIFIC) INTERROGATORIES TO DEFENDANT STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY

TO:   DEFENDANT STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY, by and through its Attorney for Service: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

Pursuant to Rule 197 of the Texas Rules of Civil Procedure, Plaintiff Hermelinda Rizo requests that the above-named Defendant, State Auto Property & Casualty Insurance Company (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following set of interrogatories.

Respectfully submitted,

**MOSTYN LAW**

*/s/ Amber Anderson Mostyn*
Amber Anderson Mostyn
State Bar No. 90001704
Molly K. Bowen
State Bar No. 24069898
ala_teamefile@mostynlaw.com
3810 W. Alabama St.
Houston, Texas 77027
(713) 714-0000 (Office)
(713) 714-1111 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

1

## DEFINITIONS

The following definitions shall have the following meanings, unless the context of the discovery request requires otherwise:

1. "Document" means any textual, visual and auditory information items in all forms in which they are stored and/or communicated.

2. "Person" means an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, agent, broker, adjuster, contractor/estimator, engineer, independent contractor, or employee.

3. "Handle", handled", "handling", and/or "worked on" - any person, as defined above, that made a decision, investigated, adjusted, consulted, supervised, managed, settled, approved, provided information or otherwise performed a task relating to the claims made the basis of this lawsuit, excluding persons performing purely ministerial or clerical tasks.

4. "Policy" refers to the policy of insurance in effect on the date that the loss made the basis of this lawsuit occurred.

5. "Property" refers to the residence, dwelling, other structures, and personal property covered by the Policy, as defined above, made the basis of this lawsuit.

6. "Bexar County Hailstorm" and/or "April 25, 2015 hail and windstorm" refer to the hail and/or windstorm that occurred during the month of April of 2015 in Bexar County and surrounding areas.

7. "Describe," when referring to a document, is defined to require that you state the following:

    a. The nature (e.g., letter, handwritten note) of the document;
    b. The title or heading that appears on the document;
    c. The date of the document and the date of each addendum supplement, or other addition or change;
    d. The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered;
    e. The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

## PRODUCTION PROTOCOL RELATING TO ELECTRONICALLY STORED INFORMATION (ESI) ATTENDANT TO PLAINTIFFS' DISCOVERY TO DEFENDANT

1.  "Information items" as used here encompass individual documents and records (including associated metadata) whether on paper or film, as discrete "files" stored electronically, optically or magnetically or as a record within a database, archive or container file. The term should be read broadly to include e-mails, messaging, word processed documents, digital presentations and spreadsheets.

2.  Consistent with Tex. R. Civ. P. 196.4, responsive electronically stored information (ESI) has been requested by the Plaintiff(s) in its native form; that is, in the form in which the information was customarily created, used and stored by the native application employed by the producing party in the ordinary course of business. The producing party shall not produce in a format not requested and later assert that production as a basis of not producing in the requested format, except upon agreement by the parties prior to production or ordered by the Court. The parties are reminded of their obligation to confer and to make reasonable efforts to resolve disputes regarding production without court intervention. See *In re Weekley Homes, L.P.*, 295 S.W. 3d 309 (Tex. 2009); Tex. R. Civ. P. 192.4(b).

3.  If it is infeasible or unduly burdensome to produce an item of responsive ESI in its native form, it may be produced in an agreed-upon near-native form; that is, in a form in which the item can be imported into the native application without a material loss of content, structure or functionality as compared to the native form. Static image production formats serve as near-native alternatives only for information items that are natively static images (i.e., photographs and scans). Any and all agreements between the parties on a non-native form of production shall occur prior to initial production and the agreements shall be in writing. If no agreement can be made between the parties, consistent with Texas Rules of Civil Procedure 196.4, Defendant will object and file with the Court evidence that production in native or near-native form is unduly burdensome or requires extraordinary steps. In the event the Court determines that production in native or near-native format is infeasible, production shall be made in accordance with Instruction No. 6 of this Protocol.

4.  The table below supplies examples of agreed-upon native or near-native forms in which specific types of ESI should be produced:

| Source ESI | Native or Near Native Form or Forms Sought |
|---|---|
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| WordPerfect documents | .WPD |
| Adobe Acrobat Documents | .PDF |
| Photographs | .JPG, .PDF |

| Xactimate Documents | .ESX |
|---|---|
| E-mail | Messages should be produced in a form or forms that readily support import into standard e-mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard). For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced. For Lotus Notes mail, furnish .NSF files or convert to .PST. If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced in a delimited text file. |

5.   Absent a showing of need, a party shall only produce reports from databases that can be generated in the ordinary course of business (i.e., without specialized programming skills), and these shall be produced in a delimited electronic format preserving field and record structures and names.  The parties will meet and confer prior to initial production regarding programmatic database productions as necessary.

6.   Information items that are paper documents or that require redaction shall be produced in static image formats, e.g., single-page .TIF or multipage PDF images.  If an information item contains color, the producing party shall not produce the item in a form that does not display color.  The full content of each document will be extracted by optical character recognition (OCR) or other suitable method to a searchable text file produced with the corresponding page image(s) or embedded within the image file.

7.   Parties shall take reasonable steps to ensure that text extraction methods produce usable, accurate and complete searchable text.

8.   Individual information items requiring redaction shall (as feasible) be redacted natively or produced in .PDF format and redacted using the Adobe Acrobat redaction feature. Redactions shall not be accomplished in a manner that serves to downgrade the ability to electronically search the unredacted portions of the item.  To the extent a producing party asserts that production in .PDF format and redaction using the Adobe Acrobat redaction feature is unfeasible, the parties are directed to confer in an attempt to resolve any dispute without Court intervention.  If the dispute cannot be resolved between the parties, the manner of production can be brought before the Court consistent with Tex. R. Civ. P. 196.4.

9.   Upon a showing of need, a producing party shall make a reasonable effort to locate and produce the native counterpart(s) of any .PDF or .TIF document produced.  The parties agree to meet and confer prior to initial production regarding production of any such

documents. This provision shall not serve to require a producing party to reveal redacted content.

10. Except as set out in this Protocol, a party need not produce identical information items in more than one form and shall globally de-duplicate identical items across custodians using each document's unique MD5 hash value. The content, metadata and utility of an information item shall all be considered in determining whether information items are identical, and items reflecting different information shall not be deemed identical.

11. Production should be made using appropriate electronic media of the producing party's choosing provided that the production media chosen not impose an undue burden or expense upon a recipient. All productions should be encrypted for transmission to the receiving party. The producing party shall, contemporaneously with production, supply decryption credentials and passwords to the receiving party for all items produced in an encrypted or password-protected form.

12. Each information item produced shall be identified by naming the item to correspond to a Bates identifier according to the following protocol:

   i. The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying the party making production;

   ii. The next nine (9) characters will be a unique, consecutive numeric value assigned to the item by the producing party. This value shall be padded with leading zeroes as needed to preserve its length;

   iii. The final five (5) characters are reserved to a sequence beginning with an underscore (_) followed by a four digit number reflecting pagination of the item when printed to paper or converted to an image format for use in proceedings or when attached as exhibits to pleadings.

   iv. By way of example, a Microsoft Word document produced by Republic Lloyds in its native format might be named: REPL000000123.docx. Were the document printed out for use in deposition, page six of the printed item must be embossed with the unique identifier REPL000000123_0006.

13. Information items designated "Confidential" may, at the Producing Party's option:

   a. Be separately produced on electronic production media prominently labeled "Confidential" to comply with a Protective Order, if applicable.

   b. When any item so designated is converted to a printed format for any reason or imaged format for use in any submission or proceeding, the printout or page image shall bear be labeled "Confidential" on each page in a clear and conspicuous manner, but not so as to obscure content.

14.   Producing party shall furnish a delimited load file supplying the metadata field values listed below for each information item produced (to the extent the values exist and as applicable):

| **Field** |
| --- |
| BeginBates |
| EndBates |
| BeginAttach |
| EndAttach |
| Custodian/Source |
| Source File Name |
| Source File Path |
| From/Author |
| To |
| CC |
| BCC |
| Date Sent |
| Time Sent |
| Subject/Title |
| Last Modified Date |
| Last Modified Time |
| Document Type |
| Redacted Flag (yes/no) |
| Hidden Content/Embedded Objects Flag (yes/no) |
| Confidential flag (yes/no) |
| MD5 Hash value |
| Hash De-Duplicated Instances (by full path) |

15.   Each production should include a cross-reference load file that correlates the various files, images, metadata field values and searchable text produced.

16.   Parties shall respond to each request for production by listing the Bates numbers/ranges of responsive documents produced, and where an information item responsive to these discovery requests has been withheld or redacted on a claim that it is privileged, the producing party shall furnish a privilege log in accordance with Texas Rule of Civil Procedure 193.3.

## PLAINTIFF HERMELINDA RIZO'S FIRST SET OF (CLAIM SPECIFIC) INTERROGATORIES TO DEFENDANT

1.  To the extent Defendant is aware, state any violations of Texas Insurance Code Section 542 that were discovered on this claim during the claims handling process.

    **ANSWER:**


2.  To the extent Defendant is aware, state any violations of the requirements or obligations owed to Plaintiff(s) under the Policy relating the claim made the basis of this Lawsuit that were discovered during the claims handling process.

    **ANSWER:**


3.  State the date Defendant first anticipated litigation.

    **ANSWER:**


4.  Identify all evidence that may be used to impeach, by proof of final conviction of any felony or crime of moral turpitude, of any witness, including any party witness, by stating the following identifying information, pursuant to Tex. R. Evid. 609:
    a.  the name of the accused;
    b.  the charged offense;
    c.  whether the crime was a felony or involved moral turpitude;
    d.  the date of final conviction; and
    e.  the style, case number, and county of the proceeding.

    **ANSWER:**


5.  Identify any and all witnesses who may be called to testify at trial pursuant to Rule 192.3(d) of the Texas Rules of Civil Procedure.

    **ANSWER:**

7

6.     Pursuant to Rule 192.3(e) of the Texas Rules of Civil Procedure, for each consulting expert, or expert who is not expected to be called as a witness but whose work product 1) forms the basis either in whole or in part of the opinions of an expert who is to be called as a witness and/or 2) has been reviewed or relied upon by a testifying expert witness, please state:

  a.  The name, address, and telephone of such expert;
  b.  The number of times that expert has been retained by a defendant in any case;
  c.  The number of times that expert has been retained by a plaintiff in any case;
  e.  The number of times that expert has been retained by the attorney representing any Defendants in this suit;
  f.  The number of times that expert has been retained by the law firm representing any Defendants in this suit; and
  g.  The amount of compensation received or to be received in this case.

**ANSWER:**

7.     If you contend that the Policy is void for any reason, state the specific factual bases for that contention, identifying any and all investigations, the factors considered and the conclusion reached and the evidence that is the basis for that conclusion.

**ANSWER:**

8.     If you contend that the Plaintiff(s) made any misrepresentation regarding the Policy or the claim made the basis of this Lawsuit, state what specific misrepresentation(s) was/were made and the factual bases for your contention.

**ANSWER:**

8

**"EXHIBIT A-1"**

**CAUSE NO.**_____

| | | |
|---|---|---|
| FRANCISCO RIZO AND | § | IN THE DISTRICT COURT OF |
| HERMELINDA RIZO, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| STATE AUTO PROPERTY & | § | |
| CASUALTY INSURANCE | § | |
| COMPANY AND DUSTIN CHARLES | § | |
| BRADFORD, | § | |
| *Defendants.* | § | _____ JUDICIAL DISTRICT |

<u>PLAINTIFFS' REQUEST FOR DISCLOSURE TO DEFENDANT</u>
<u>DUSTIN CHARLES BRADFORD</u>

TO:   DEFENDANT DUSTIN CHARLES BRADFORD, at his place of residence at 5191 Willow Grove Place North, Dublin, Ohio 43017.

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request that the above-named Defendant, Dustin Charles Bradford (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in Rule 194.2.

Respectfully submitted,

MOSTYN LAW

 */s/ Amber Anderson Mostyn*
Amber Anderson Mostyn
State Bar No. 90001704
Molly K. Bowen
State Bar No. 24069898
ala_teamefile@mostynlaw.com
3810 W. Alabama St.
Houston, Texas 77027
(713) 714-0000 (Office)
(713) 714-1111 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

1

**"EXHIBIT B-1"**

**CAUSE NO. _____**

| | | |
|---|---|---|
| **FRANCISCO RIZO AND** | § | **IN THE DISTRICT COURT OF** |
| **HERMELINDA RIZO,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **STATE AUTO PROPERTY &** | § | |
| **CASUALTY INSURANCE** | § | |
| **COMPANY AND DUSTIN CHARLES** | § | |
| **BRADFORD,** | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION TO DEFENDANT
DUSTIN CHARLES BRADFORD**

TO:   DEFENDANT DUSTIN CHARLES BRADFORD, at his place of residence at 5191
      Willow Grove Place North, Dublin, Ohio 43017.

      Pursuant to Rule 196 of the Texas Rules of Civil Procedure, Plaintiffs request that the
above-named Defendant, Dustin Charles Bradford (hereinafter referred to as "Defendant"),
disclose, within fifty-one (51) days after the date of service of this request, the information or
material described in the following request for production.

                              Respectfully submitted,

                              **MOSTYN LAW**


                               */s/ Amber Anderson Mostyn*
                              Amber Anderson Mostyn
                              State Bar No. 90001704
                              Molly K. Bowen
                              State Bar No. 24069898
                              ala_teamefile@mostynlaw.com
                              3810 W. Alabama St.
                              Houston, Texas 77027
                              (713) 714-0000 (Office)
                              (713) 714-1111 (Facsimile)

                              **ATTORNEYS FOR PLAINTIFFS**

                                                                            1

# DEFINITIONS

The following definitions shall have the following meanings, unless the context of the discovery request requires otherwise:

1. "Document" means any textual, visual and auditory information items in all forms in which they are stored and/or communicated.

2. "Person" means an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, agent, broker, adjuster, contractor/estimator, engineer, independent contractor, or employee.

3. "Handle", handled", "handling", and/or "worked on" - any person, as defined above, that made a decision, investigated, adjusted, consulted, supervised, managed, settled, approved, provided information or otherwise performed a task relating to the claims made the basis of this lawsuit, excluding persons performing purely ministerial or clerical tasks.

4. "Policy" refers to the policy of insurance in effect on the date that the loss made the basis of this lawsuit occurred.

5. "Property" refers to the residence, dwelling, other structures, and personal property covered by the Policy, as defined above, made the basis of this lawsuit.

6. "Bexar County Hailstorm" and/or "April 25, 2015 hail and windstorm" refer to the hail and/or windstorm that occurred during the month of April of 2015 in Bexar County and surrounding areas.

7. "Describe," when referring to a document, is defined to require that you state the following:

   a. The nature (e.g., letter, handwritten note) of the document;
   b. The title or heading that appears on the document;
   c. The date of the document and the date of each addendum supplement, or other addition or change;
   d. The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered;
   e. The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

**PRODUCTION PROTOCOL RELATING TO ELECTRONICALLY STORED INFORMATION (ESI) ATTENDANT TO PLAINTIFFS' DISCOVERY TO DEFENDANT**

1.  "Information items" as used here encompass individual documents and records (including associated metadata) whether on paper or film, as discrete "files" stored electronically, optically or magnetically or as a record within a database, archive or container file.  The term should be read broadly to include e-mails, messaging, word processed documents, digital presentations and spreadsheets.

2.  Consistent with Tex. R. Civ. P. 196.4, responsive electronically stored information (ESI) has been requested by the Plaintiff(s) in its native form; that is, in the form in which the information was customarily created, used and stored by the native application employed by the producing party in the ordinary course of business.  The producing party shall not produce in a format not requested and later assert that production as a basis of not producing in the requested format, except upon agreement by the parties prior to production or ordered by the Court.  The parties are reminded of their obligation to confer and to make reasonable efforts to resolve disputes regarding production without court intervention.  See *In re Weekley Homes, L.P.*, 295 S.W. 3d 309 (Tex. 2009); Tex. R. Civ. P. 192.4(b).

3.  If it is infeasible or unduly burdensome to produce an item of responsive ESI in its native form, it may be produced in an agreed-upon near-native form; that is, in a form in which the item can be imported into the native application without a material loss of content, structure or functionality as compared to the native form.  Static image production formats serve as near-native alternatives only for information items that are natively static images (i.e., photographs and scans).  Any and all agreements between the parties on a non-native form of production shall occur prior to initial production and the agreements shall be in writing.  If no agreement can be made between the parties, consistent with Texas Rules of Civil Procedure 196.4, Defendant will object and file with the Court evidence that production in native or near-native form is unduly burdensome or requires extraordinary steps.  In the event the Court determines that production in native or near-native format is infeasible, production shall be made in accordance with Instruction No. 6 of this Protocol.

4.  The table below supplies examples of agreed-upon native or near-native forms in which specific types of ESI should be produced:

| Source ESI | Native or Near Native Form or Forms Sought |
|---|---|
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| WordPerfect documents | .WPD |
| Adobe Acrobat Documents | .PDF |
| Photographs | .JPG, .PDF |

| Xactimate Documents | .ESX |
| --- | --- |
| E-mail | Messages should be produced in a form or forms that readily support import into standard e-mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard). For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced. For Lotus Notes mail, furnish .NSF files or convert to .PST. If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced in a delimited text file. |

5.   Absent a showing of need, a party shall only produce reports from databases that can be generated in the ordinary course of business (i.e., without specialized programming skills), and these shall be produced in a delimited electronic format preserving field and record structures and names. The parties will meet and confer prior to initial production regarding programmatic database productions as necessary.

6.   Information items that are paper documents or that require redaction shall be produced in static image formats, e.g., single-page .TIF or multipage PDF images. If an information item contains color, the producing party shall not produce the item in a form that does not display color. The full content of each document will be extracted by optical character recognition (OCR) or other suitable method to a searchable text file produced with the corresponding page image(s) or embedded within the image file.

7.   Parties shall take reasonable steps to ensure that text extraction methods produce usable, accurate and complete searchable text.

8.   Individual information items requiring redaction shall (as feasible) be redacted natively or produced in .PDF format and redacted using the Adobe Acrobat redaction feature. Redactions shall not be accomplished in a manner that serves to downgrade the ability to electronically search the unredacted portions of the item. To the extent a producing party asserts that production in .PDF format and redaction using the Adobe Acrobat redaction feature is unfeasible, the parties are directed to confer in an attempt to resolve any dispute without Court intervention. If the dispute cannot be resolved between the parties, the manner of production can be brought before the Court consistent with Tex. R. Civ. P. 196.4.

9.   Upon a showing of need, a producing party shall make a reasonable effort to locate and produce the native counterpart(s) of any .PDF or .TIF document produced. The parties agree to meet and confer prior to initial production regarding production of any such

documents. This provision shall not serve to require a producing party to reveal redacted content.

10. Except as set out in this Protocol, a party need not produce identical information items in more than one form and shall globally de-duplicate identical items across custodians using each document's unique MD5 hash value. The content, metadata and utility of an information item shall all be considered in determining whether information items are identical, and items reflecting different information shall not be deemed identical.

11. Production should be made using appropriate electronic media of the producing party's choosing provided that the production media chosen not impose an undue burden or expense upon a recipient. All productions should be encrypted for transmission to the receiving party. The producing party shall, contemporaneously with production, supply decryption credentials and passwords to the receiving party for all items produced in an encrypted or password-protected form.

12. Each information item produced shall be identified by naming the item to correspond to a Bates identifier according to the following protocol:

   i. The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying the party making production;

   ii. The next nine (9) characters will be a unique, consecutive numeric value assigned to the item by the producing party. This value shall be padded with leading zeroes as needed to preserve its length;

   iii. The final five (5) characters are reserved to a sequence beginning with an underscore (_) followed by a four digit number reflecting pagination of the item when printed to paper or converted to an image format for use in proceedings or when attached as exhibits to pleadings.

   iv. By way of example, a Microsoft Word document produced by Republic Lloyds in its native format might be named: REPL000000123.docx. Were the document printed out for use in deposition, page six of the printed item must be embossed with the unique identifier REPL000000123_0006.

13. Information items designated "Confidential" may, at the Producing Party's option:

   a. Be separately produced on electronic production media prominently labeled "Confidential" to comply with a Protective Order, if applicable.

   b. When any item so designated is converted to a printed format for any reason or imaged format for use in any submission or proceeding, the printout or page image shall bear be labeled "Confidential" on each page in a clear and conspicuous manner, but not so as to obscure content.

14.   Producing party shall furnish a delimited load file supplying the metadata field values listed below for each information item produced (to the extent the values exist and as applicable):

| **Field** |
| --- |
| BeginBates |
| EndBates |
| BeginAttach |
| EndAttach |
| Custodian/Source |
| Source File Name |
| Source File Path |
| From/Author |
| To |
| CC |
| BCC |
| Date Sent |
| Time Sent |
| Subject/Title |
| Last Modified Date |
| Last Modified Time |
| Document Type |
| Redacted Flag (yes/no) |
| Hidden Content/Embedded Objects Flag (yes/no) |
| Confidential flag (yes/no) |
| MD5 Hash value |
| Hash De-Duplicated Instances (by full path) |

15.   Each production should include a cross-reference load file that correlates the various files, images, metadata field values and searchable text produced.

16.   Parties shall respond to each request for production by listing the Bates numbers/ranges of responsive documents produced, and where an information item responsive to these discovery requests has been withheld or redacted on a claim that it is privileged, the producing party shall furnish a privilege log in accordance with Texas Rule of Civil Procedure 193.3.

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION TO DEFENDANT

1.      All documents related to Plaintiffs, the Property, the Policy, and/or the claim made the basis of this Lawsuit.

**RESPONSE:**


2.      All licenses or certifications that are identified in response to Interrogatory Number 3.

**RESPONSE:**


3.      All training documents you have for adjusting hail and/or windstorm claims.  This request is limited to the past 2 years.

**RESPONSE:**


4.      All applications you submitted (or submitted on your behalf) for purposes of obtaining a license to adjust claims in the State of Texas that were in effect at the time of the Bexar County Hailstorms occurring on or about April 25, 2015.

**RESPONSE:**


5.      All resumes for the last five (5) years.

**RESPONSE:**


6.      All applications for employment you submitted for purposes of obtaining employment as an adjuster and/or claims handler in the State of Texas.  This request is limited to the five (5) years preceding the Bexar County Hailstorms occurring on or about April 25, 2015.

**RESPONSE:**


7.      All documents you relied upon in the adjustment of the claim made the basis of this Lawsuit.

**RESPONSE:**

8.     To the extent you made a determination or recommendation regarding depreciation, all documents relating to the application of depreciation on a homeowners property claim in the State of Texas for the past two (2) years.

     **RESPONSE:**

9.     To the extent you made a determination or recommendation regarding overhead and profit, all documents relating to the application of overhead and profit on a homeowners property claim in the State of Texas for the past two (2) years.

     **RESPONSE:**

10.    All documents or items in your possession related to the claim made the basis of this Lawsuit that you did not submit to the insurance company and/or adjusting company assigned to this claim.

     **RESPONSE:**

11.    All documents meant to instruct, advise, or guide the handling or adjusting hail and/or windstorm claims in the State of Texas for the last 2 years.

     **RESPONSE:**

12.    All training manuals in effect at the time of Plaintiffs' claim used for software programs utilized in the claim made the basis of this lawsuit.

     **RESPONSE:**

13.    All documents relating to any performance reviews or evaluations by the carrier of the underlying claim, whether formal or informal, regarding your handling of claims arising out of the Bexar County Hailstorms occurring on or about April 25, 2015.

     **RESPONSE:**

14.    All documents relating to any Texas Department of Insurance complaints made against you by an insured related to claims arising out of the Bexar County Hailstorms occurring on or about April 25, 2015.

     **RESPONSE:**

15.     All contracts, indemnity agreements, and/or confidentiality agreements between you and the adjusting company and/or insurance company in effect during the handling of claims arising out of the Bexar County Hailstorms occurring on or about April 25, 2015.

      **RESPONSE:**

16.     All price lists used by you in handling claims arising out of the Bexar County Hailstorms occurring on or about April 25, 2015.  To the extent the pricelist is an unmodified pricelist from a third party, you can reference the vendor and version of the pricelist with a stipulation that it is unmodified.

      **RESPONSE:**

17.     All weather reports regarding wind and/or hail relied upon by you in handling claims arising out of the Bexar County Hailstorms occurring on or about April 25, 2015.

      **RESPONSE:**

18.     All correspondence to or from the adjusting company and/or the insurance company that issued the policy regarding modifying/modifications to the unit price cost and the price list you used in handling claims arising out of the Bexar County Hailstorms occurring on or about April 25, 2015.

      **RESPONSE:**

**"EXHIBIT C-1"**

**CAUSE NO. _____**

| | | |
|---|---|---|
| **FRANCISCO RIZO AND** | § | **IN THE DISTRICT COURT OF** |
| **HERMELINDA RIZO,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **STATE AUTO PROPERTY &** | § | |
| **CASUALTY INSURANCE** | § | |
| **COMPANY AND DUSTIN CHARLES** | § | |
| **BRADFORD,** | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

**PLAINTIFF FRANCISCO RIZO'S FIRST SET OF (CLAIM SPECIFIC) INTERROGATORIES TO DEFENDANT DUSTIN CHARLES BRADFORD**

TO:    DEFENDANT DUSTIN CHARLES BRADFORD, at his place of residence at 5191 Willow Grove Place North, Dublin, Ohio 43017.

Pursuant to Rule 197 of the Texas Rules of Civil Procedure, Plaintiff Francisco Rizo requests that the above-named Defendant, Dustin Charles Bradford (hereinafter referred to as "Defendant"), disclose, within fifty-one (51) days after the date of service of this request, the information or material described in the following set of interrogatories.

Respectfully submitted,

**MOSTYN LAW**


*/s/ Amber Anderson Mostyn*
Amber Anderson Mostyn
State Bar No. 90001704
Molly K. Bowen
State Bar No. 24069898
ala_teamefile@mostynlaw.com
3810 W. Alabama St.
Houston, Texas 77027
(713) 714-0000 (Office)
(713) 714-1111 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

1

## DEFINITIONS

The following definitions shall have the following meanings, unless the context of the discovery request requires otherwise:

1. "Document" means any textual, visual and auditory information items in all forms in which they are stored and/or communicated.

2. "Person" means an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, agent, broker, adjuster, contractor/estimator, engineer, independent contractor, or employee.

3. "Handle", handled", "handling", and/or "worked on" - any person, as defined above, that made a decision, investigated, adjusted, consulted, supervised, managed, settled, approved, provided information or otherwise performed a task relating to the claims made the basis of this lawsuit, excluding persons performing purely ministerial or clerical tasks.

4. "Policy" refers to the policy of insurance in effect on the date that the loss made the basis of this lawsuit occurred.

5. "Property" refers to the residence, dwelling, other structures, and personal property covered by the Policy, as defined above, made the basis of this lawsuit.

6. "Bexar County Hailstorm" and/or "April 25, 2015 hail and windstorm" refer to the hail and/or windstorm that occurred during the month of April of 2015 in Bexar County and surrounding areas.

7. "Describe," when referring to a document, is defined to require that you state the following:

   a.   The nature (e.g., letter, handwritten note) of the document;
   b.   The title or heading that appears on the document;
   c.   The date of the document and the date of each addendum supplement, or other addition or change;
   d.   The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered;
   e.   The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

**PRODUCTION PROTOCOL RELATING TO ELECTRONICALLY STORED INFORMATION (ESI) ATTENDANT TO PLAINTIFFS' DISCOVERY TO DEFENDANT**

1.  "Information items" as used here encompass individual documents and records (including associated metadata) whether on paper or film, as discrete "files" stored electronically, optically or magnetically or as a record within a database, archive or container file.  The term should be read broadly to include e-mails, messaging, word processed documents, digital presentations and spreadsheets.

2.  Consistent with Tex. R. Civ. P. 196.4, responsive electronically stored information (ESI) has been requested by the Plaintiff(s) in its native form; that is, in the form in which the information was customarily created, used and stored by the native application employed by the producing party in the ordinary course of business.  The producing party shall not produce in a format not requested and later assert that production as a basis of not producing in the requested format, except upon agreement by the parties prior to production or ordered by the Court.  The parties are reminded of their obligation to confer and to make reasonable efforts to resolve disputes regarding production without court intervention.  See *In re Weekley Homes, L.P.*, 295 S.W. 3d 309 (Tex. 2009); Tex. R. Civ. P. 192.4(b).

3.  If it is infeasible or unduly burdensome to produce an item of responsive ESI in its native form, it may be produced in an agreed-upon near-native form; that is, in a form in which the item can be imported into the native application without a material loss of content, structure or functionality as compared to the native form.  Static image production formats serve as near-native alternatives only for information items that are natively static images (i.e., photographs and scans).  Any and all agreements between the parties on a non-native form of production shall occur prior to initial production and the agreements shall be in writing.  If no agreement can be made between the parties, consistent with Texas Rules of Civil Procedure 196.4, Defendant will object and file with the Court evidence that production in native or near-native form is unduly burdensome or requires extraordinary steps.  In the event the Court determines that production in native or near-native format is infeasible, production shall be made in accordance with Instruction No. 6 of this Protocol.

4.  The table below supplies examples of agreed-upon native or near-native forms in which specific types of ESI should be produced:

| Source ESI | Native or Near Native Form or Forms Sought |
| --- | --- |
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| WordPerfect documents | .WPD |
| Adobe Acrobat Documents | .PDF |
| Photographs | .JPG, .PDF |

3

| Xactimate Documents | .ESX |
|---|---|
| E-mail | Messages should be produced in a form or forms that readily support import into standard e-mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard). For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced. For Lotus Notes mail, furnish .NSF files or convert to .PST. If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced in a delimited text file. |

5.  Absent a showing of need, a party shall only produce reports from databases that can be generated in the ordinary course of business (i.e., without specialized programming skills), and these shall be produced in a delimited electronic format preserving field and record structures and names. The parties will meet and confer prior to initial production regarding programmatic database productions as necessary.

6.  Information items that are paper documents or that require redaction shall be produced in static image formats, e.g., single-page .TIF or multipage PDF images. If an information item contains color, the producing party shall not produce the item in a form that does not display color. The full content of each document will be extracted by optical character recognition (OCR) or other suitable method to a searchable text file produced with the corresponding page image(s) or embedded within the image file.

7.  Parties shall take reasonable steps to ensure that text extraction methods produce usable, accurate and complete searchable text.

8.  Individual information items requiring redaction shall (as feasible) be redacted natively or produced in .PDF format and redacted using the Adobe Acrobat redaction feature. Redactions shall not be accomplished in a manner that serves to downgrade the ability to electronically search the unredacted portions of the item. To the extent a producing party asserts that production in .PDF format and redaction using the Adobe Acrobat redaction feature is unfeasible, the parties are directed to confer in an attempt to resolve any dispute without Court intervention. If the dispute cannot be resolved between the parties, the manner of production can be brought before the Court consistent with Tex. R. Civ. P. 196.4.

9.  Upon a showing of need, a producing party shall make a reasonable effort to locate and produce the native counterpart(s) of any .PDF or .TIF document produced. The parties agree to meet and confer prior to initial production regarding production of any such

documents. This provision shall not serve to require a producing party to reveal redacted content.

10. Except as set out in this Protocol, a party need not produce identical information items in more than one form and shall globally de-duplicate identical items across custodians using each document's unique MD5 hash value. The content, metadata and utility of an information item shall all be considered in determining whether information items are identical, and items reflecting different information shall not be deemed identical.

11. Production should be made using appropriate electronic media of the producing party's choosing provided that the production media chosen not impose an undue burden or expense upon a recipient. All productions should be encrypted for transmission to the receiving party. The producing party shall, contemporaneously with production, supply decryption credentials and passwords to the receiving party for all items produced in an encrypted or password-protected form.

12. Each information item produced shall be identified by naming the item to correspond to a Bates identifier according to the following protocol:

    i. The first four (4) characters of the filename will reflect a unique alphanumeric designation identifying the party making production;

    ii. The next nine (9) characters will be a unique, consecutive numeric value assigned to the item by the producing party. This value shall be padded with leading zeroes as needed to preserve its length;

    iii. The final five (5) characters are reserved to a sequence beginning with an underscore (_) followed by a four digit number reflecting pagination of the item when printed to paper or converted to an image format for use in proceedings or when attached as exhibits to pleadings.

    iv. By way of example, a Microsoft Word document produced by Republic Lloyds in its native format might be named: REPL000000123.docx. Were the document printed out for use in deposition, page six of the printed item must be embossed with the unique identifier REPL000000123_0006.

13. Information items designated "Confidential" may, at the Producing Party's option:

    a. Be separately produced on electronic production media prominently labeled "Confidential" to comply with a Protective Order, if applicable.

    b. When any item so designated is converted to a printed format for any reason or imaged format for use in any submission or proceeding, the printout or page image shall bear be labeled "Confidential" on each page in a clear and conspicuous manner, but not so as to obscure content.

14. Producing party shall furnish a delimited load file supplying the metadata field values listed below for each information item produced (to the extent the values exist and as applicable):

| **Field** |
| --- |
| BeginBates |
| EndBates |
| BeginAttach |
| EndAttach |
| Custodian/Source |
| Source File Name |
| Source File Path |
| From/Author |
| To |
| CC |
| BCC |
| Date Sent |
| Time Sent |
| Subject/Title |
| Last Modified Date |
| Last Modified Time |
| Document Type |
| Redacted Flag (yes/no) |
| Hidden Content/Embedded Objects Flag (yes/no) |
| Confidential flag (yes/no) |
| MD5 Hash value |
| Hash De-Duplicated Instances (by full path) |

15. Each production should include a cross-reference load file that correlates the various files, images, metadata field values and searchable text produced.

16. Parties shall respond to each request for production by listing the Bates numbers/ranges of responsive documents produced, and where an information item responsive to these discovery requests has been withheld or redacted on a claim that it is privileged, the producing party shall furnish a privilege log in accordance with Texas Rule of Civil Procedure 193.3.

## PLAINTIFF FRANCISCO RIZO'S FIRST SET OF (CLAIM SPECIFIC) INTERROGATORIES TO DEFENDANT

1.  Identify all email accounts, email addresses, and/or any alias or code used to identify you and used for any communication relating to your work handling hail and/or windstorm claims arising out of the Bexar County Hailstorms occurring on or about April 25, 2015. This request is limited only to the carrier of the claim that is the subject of this Lawsuit.

    **ANSWER:**

2.  Identify generally the training or experience you had in adjusting hail and/or windstorm damage and any specific training you had for this storm prior to your handling of claim made the basis of this Lawsuit.

    **ANSWER:**

3.  Identify any degrees, Texas insurance licenses (unless you qualified for adjusting claims in Texas on an emergency basis, then list any insurance licenses you held from other states) or certifications you had at the time you handled the claim made the basis of this Lawsuit.

    **ANSWER:**

4.  Explain how you were compensated and by whom for your work on claims arising out of the Bexar County Hailstorms occurring on or about April 25, 2015, stating the amount you were compensated per claim, per day, and/or per week and identifying any bonus or incentive plans. To the extent the produced personnel file includes a compensation schedule, you may refer to such personnel file.

    **ANSWER:**

5.  State whether you are fluent in Spanish and whether you had any communication relating to the claim made the basis of this Lawsuit in Spanish. If you are not fluent in Spanish, state whether you are proficient in Spanish to communicate to adjust a claim.

    **ANSWER:**

6.     Identify the following dates:

   a.  The date you first obtained an adjuster license in the State of Texas;
   b.  The first date you were hired/retained by the insurance company defendant or any other defendant in this Lawsuit to adjust property damage claims;
   c.  The date you were first assigned to handle Bexar County Hailstorms occurring on or about April 25, 2015;
   d.  The date you closed your file on the claim made the basis of this Lawsuit; and
   f.  The last date you worked on any Bexar County Hailstorms occurring on or about April 25, 2015.

   **ANSWER:**


7.     Describe in detail each inspection you conducted of the Property made the basis of this Lawsuit, identifying:

   a.  The name and job title of any person who inspected the Property with you;
   b.  The date of each inspection;
   c.  The purpose of each inspection;
   d.  The length of time of each inspection;
   e.  The equipment or tools used during each inspection;
   f.  The areas of the Property inspected (i.e. roof, attic, individual rooms, exterior); and
   g.  Any documents generated during or as a result of each inspection, including the persons and/or entities in possession of those documents.

   **ANSWER:**


8.     Following the inspection(s), did you engage in any additional communications (e.g., telephone, in person, written communication) with Plaintiff(s)?  If yes, provide the following information:

   a.  the date of such communication(s);
   b.  the manner of such communication(s);
   c.  the person to whom You communicated;
   d.  the reason for the communication(s);
   e.  for any telephonic communication(s), identify who initiated the phone call, and the telephone number from which you called or on which you received the call; and
   f.  the general substance of the communication.

   **ANSWER:**

9.      Identify and describe all damage you observed during your inspection(s) of the claim made the basis of this Lawsuit.  To the extent the damage you observed during your inspection is reflected in scope notes and photographs, you can refer Plaintiff(s) to such scope notes and/or photographs.

**ANSWER:**


10.     For all damage observed at the Property or reflected in your scope notes and/or photographs, state what your believe to be the cause of the damage, describing the investigatory steps you took to determine the cause, and identify all person(s) and/or entity(ies) that provided information or participated in that determination.

**ANSWER:**


11.     To the extent you applied or recommended policy exclusions, identify all exclusions under the Policy applied to the claim made the basis of this Lawsuit, and for each exclusion applied or recommended, state the factual reason(s) that the exclusion was applied or recommended.

**ANSWER:**


12.     Identify the information you used to determine and how you calculated the amount of depreciation that you applied to any damage categories included in any estimates you prepared and/or approved on the claim made the basis of this Lawsuit.

**ANSWER:**


13.     How did you determine whether you would or would not apply overhead and profit (O&P) to Plaintiffs' claim?

**ANSWER:**


14.     Identify all documents that you relied upon in the adjustment of the claim made the basis of this Lawsuit.  For each document, identify who provided the document.

**ANSWER:**


9

15.   Identify all documents or information you requested from Plaintiff(s) during the investigation of the claim made the basis of this Lawsuit, the date the request was made, the person who communicated the request, and the Plaintiff(s) who received the request.

   **ANSWER:**

16.   Identify all documents or items in your possession related to the claim made the basis of this Lawsuit that you did not submit to the insurance company and/or adjusting company assigned to this claim.

   **ANSWER:**

17.   To the extent you are aware, identify all documents or items that were altered, revised, changed or removed from the documents or information you provided the insurance company or adjusting company relating to the claim made the basis of this Lawsuit.

   **ANSWER:**

18.   Identify and describe any training, guidance or instruction provided to you by any person and/or entity regarding the handling of claims arising out of the Bexar County Hailstorms occurring on or about April 25, 2015.

   **ANSWER:**